(Docket Entry No. 6)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

WILLIAM M. TOMLINSON,

    Plaintiff,

v.                              Civil No. 04-5685 (RBK)

VIRTUA -WEST JERSEY
HEALTH SYSTEM et al.,

    Defendants.

**O P I N I O N**

**KUGLER**, United States District Judge:

Presently before the Court in this action brought under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq. ("ERISA") and New Jersey common law is Defendants' motion to dismiss the complaint for failure to state a claim, under Federal Rule of Civil Procedure 12(b)(6). For the reasons expressed below, the Court will (1) deny Defendants' motion with respect to Count I, (2) grant the motion with respect to Count II; (3) deny the motion with respect to Count III; and (4) grant the motion with respect to all of Plaintiff's state law claims. As discussed in more detail below, dismissal of Count II is merited given the allegations in the Complaint, but Plaintiff is not foreclosed from amending his Complaint in a fashion that states an

1

appropriate theory of recovery.

## I. INTRODUCTION

For the purposes of this motion, the facts of the case will be recounted by accepting Plaintiff's allegations as true.  See FED. R. CIV. P. 12(B)(6).  Plaintiff is William Tomlinson.  In 1987, he left his position with Paoli Memorial Hospital to accept a position with HEMAC Inc., an affiliate of Defendant West Jersey Health System ("WJHS").[1]  During the hiring process, Barry Brown, president of WJHS and HEMAC sent to Tomlinson a letter promising him that he would be vested in the company's pension plan and that he would be credited with thirteen years of service credit for purposes of calculating his pension benefit.  The letter also explained that the contents of the letter stood as an interim agreement pending the parties' execution of a formal contract.  Tomlinson and WJHS signed a formal contract on March 5, 1987.  The contract was silent with respect to enhanced service credit for pension benefits but contained a standard merger clause to the effect that all prior agreements are superseded by the formal agreement, along with the following clause directed at compensation and benefits: "Compensation . . . including salary and employee benefits, shall be established by the President of HEMAC during January of each year . . . ."

Tomlinson's stay at WJHS lasted only seven months.  He claims he

---

[1] West Jersey Health System is now Virtua-West Jersey Health System.

resigned his position because there was a medicare fraud investigation–ongoing since before he accepted the position–making WJHS an undesirable place to work. On October 31, 2002, Tomlinson, believing himself entitled to pension benefits, applied to the West Jersey Health System Retirement Plan (the "Plan") for pension benefits. At first, Tomlinson's request went unanswered; but Defendant Edward Dunn, the only member of the Plan Administrative Committee, a fiduciary of the Plan, eventually responded that Tomlinson was not entitled to receive benefits under the Plan and that Brown was not authorized to grant Tomlinson the vesting and service credit reflected in the letter reflecting the interim agreement. Dunn provided Tomlinson with a Summary Plan Description of the current Plan but only the 1987 version of the actual plan documents. According to the Complaint, Dunn stood as the highest level of appeal. Hence, Tomlinson alleges he exhausted the remedies available through the Plan.

Tomlinson filed the current Complaint on November 18, 2004 alleging various violations of ERISA and state law. In his description of the parties, Tomlinson alleges WJHS retains control over the operation and administration of the Plan and is a fiduciary of the Plan. Further, Tomlinson alleges that the Plan grants WJHS complete control over the Trustee and Administrative Committee, the members of which serve at the pleasure of WJHS. According to Tomlinson, WJHS, the Administrative Committee, and the Trustee, are plan fiduciaries. Regarding Brown, whom Tomlinson alleges promised him service credit and vesting in the Plan, Tomlinson claims that, as president

of WJHS and HEMAC, Brown held himself out as having the authority to grant Tomlinson these benefits-based incentives.  Tomlinson further alleges that Brown was an administrator and fiduciary of the Plan at the time he promised Tomlinson service credit and vesting and that Brown was the "final decision-maker regarding pension matters." Defendants filed the current motion to dismiss, pursuant to FED. R. CIV. P. 12(b)(6), on February 14, 2005, seeking dismissal of all but Count Four of Tomlinson's Complaint.

## II.  MOTION TO DISMISS STANDARD

In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept Tomlinson's allegations along with all reasonable inferences that may be drawn from them as true.  Doe v. Delie, 257 F.3d 309, 313 (3d Cir. 2001) (citing Piecknick v. Commonwealth of Pennsylvania, 36 F.3d 1250, 1255 (3d Cir.1994)).  The Court may dismiss the Complaint only if Tomlinson can prove no set of facts that would entitle him to relief.  Burstein v. Retirement Account Plan for Employees of Allegheny Health Education and Research Foundation, 334 F.3d 365, 374 (3d Cir. 2003) (citation omitted).  When, as here, a defendant raises the statute of limitations with a Rule 12(b)(6) motion to dismiss, the Court may not dismiss the Complaint on that basis unless it is clear from the facts alleged in the complaint that the particular claim is time-barrred.  Robinson v. Johnson, 313 F.3d 128, 135 (3d Cir. 2002) (citing Hanna v. U.S. Veterans' Admin. Hosp., 514 F.2d 1092, 1094 (3d Cir.1975)).

**III. DISCUSSION**

      Defendants attack Tomlinson's Complaint by invoking several technical aspects of the various ERISA provisions under which his claims have been asserted. Tomlinson, in addition to addressing the merits of these arguments, criticizes Defendants for exalting form over substance when Tomlinson clearly has alleged wrongdoing under ERISA, regardless of the appropriate enforcement provision under ERISA. The Court disagrees with Tomlinson's criticism of Defendants' motion. Given Third Circuit law on the issues presented in this case, the particular provisions under which Tomlinson is pursuing his claims are of critical importance and the Court will focus sharply on those provisions in the discussion to follow. As preview, the Court concludes (1) that Count OneI states a claim under section 502(a)(1)(A); (2) that Count Two, though it may state a claim in a technical sense, seeks relief that is not available under section 502(a)(3) and is time-barred as alleged; (3) that Count Three states a claim under ERISA; and (4) all of Tomlinson's state law claims are preempted.

      A. <u>Count One</u>

      Defendants argue that Tomlinson's claim for breach of fiduciary duty, under Count One, is invalid as alleged because Tomlinson can bring this claim only in a representative capacity under sections 409 and 502(a)(2) of ERISA. Defendants overlook

5

the language of Tomlinson's allegations which focuses on the breach of fiduciary duty brought about by Defendants' failure to provide the appropriate plan information.  Such a claim is viable under section 502(a)(1)(A) of ERISA and can be brought directly by a participant.  See Horvath v. Keystone Health Plan East, Inc., 333 F.3d 450, 456 (3d Cir. 2003) (citing Gillis v. Hoechst Celanese Corp., 4 F.3d 1137, 1148 (3d Cir. 1993)   The relief available under those sections is limited, however, to injunctive relief and the discretionary civil penalty provided for in section 502(c).  29 U.S.C. § 1132(c).  Therefore, Tomlinson's claim centered on Defendants' failure to provide information, in Count One of his Complaint, can proceed in pursuit of the relief available for such claims.

In defending his pleading in Count One, Tomlinson also points out that he has stated a claim for a misrepresentation-based breach of fiduciary duty claim, enforceable under section 502(a)(3).  The Court will address the viability of such a claim in part B, below.

### B.  Count Two

Defendants attack Tomlinson's Complaint at Count Two on two grounds. First, they contend that his claim for equitable estoppel is time-barred.  Second, they argue that, even if not time-barred, the estoppel claim is invalid because it seeks compensatory damages under the guise of a claim for equitable relief.  Addressing the second argument first, Tomlinson's allegations in Count Two are sufficient to establish a

6

cause of action for estoppel under section 502(a)(3).  The relief he requests is, however, not appropriate under section 502(a)(3).  Also, Tomlinson's claim, as stated, is time-barred.  Tomlinson will have the opportunity to amend his Complaint and thus address its deficiencies.

Count Two of Tomlinson's Complaint contains what the parties have referred to as his estoppel claim.  The factual underpinning for this claim is as follows.  In paragraph 7 of his Complaint, Tomlinson alleges WJHS is a fiduciary of the Plan.  He further alleges, in paragraph 36, that Brown, the person who promised Tomlinson the additional thirteen years of service credit, acted as an administrator of the Plan and in a fiduciary capacity when he made the promise to Tomlinson.  In paragraph 39, Tomlinson alleges he resigned his position with Paoli Memorial Hospital and accepted the position with WJHS "[i]n reliance upon Brown's promises and representations" regarding the thirteen years of service credit.  Then, in paragraph 62 under Count Two, Tomlinson alleges he "relied to his detriment upon Defendant's knowing misrepresentations regarding retirement benefits."  Further, because of those representations and

> because of the existence of extraordinary circumstances known to Defendant, including but not limited to the fact that there was an ongoing Medicare fraud investigation at the time of his hire, that Plaintiff was actively recruited from a secure position with another employer, Defendant is estopped to deny Plaintiffs' entitlement to sums equivalent to the current value of the promised vested benefit, as equitable relief under ERISA § 502(a)(3) . . . and under the broad remedial purpose of ERISA, 29 U.S.C. § 1001(b).

Par. 62 of Tomlinson's Complaint at Count Two.

First, the Court will address the relief available under section 502(a)(3) for

7

Tomlinson's estoppel claim.  Then the Court will discuss Defendants' argument that this claim is time-barred.

### *1. Relief Available Under Section 502(a)(3).*

A cause of action for equitable estoppel arises under ERISA section 502(a)(3).  Burstein, 334 F.3d at 383.  To state a claim for equitable estoppel, a plaintiff must allege three elements: "'(1) a material misrepresentation, (2) reasonable and detrimental reliance upon the representation, and (3) extraordinary circumstances.'" Id. (quoting Curcio, 33 F.3d at 235).  In terms of the recovery available under this claim, it is significant that it arises under section 502(a)(3).  Section 502(a)(3) provides that a participant may bring a civil action "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief."  Monetary damages are generally not available to one pursuing a claim under section 502(a)(3).  Hein v. FDIC, 88 F.3d 210, 224 (3d Cir. 1996).  This is because subsection (A) is, by its terms, expressly limited to injunctive relief, id.; and subsection (B) permits recovery of monetary damages only to the extent that such damages can be gained through traditional equitable remedies, such as restitution.  Id.

The Supreme Court has recognized, however, that in certain circumstances, particularly where ERISA does not elsewhere provide a plaintiff adequate relief for its injury, a court may provide an individual award under section 502(a)(3) that is "appropriate" under the circumstances.  Varity Corp. v. Howe, 516 U.S. 489, 515 (1996);

Ream v. Frey, 107 F.3d 147, 152-53 (3d Cir. 1997).  As the Court in Varity emphasized, courts must exercise caution in fashioning an appropriate equitable remedy under section 502(a)(3)(B).  Specifically, the Court implored lower courts to "keep in mind the special nature and purpose of employee benefit plans, and . . . respect the policy choices reflected in the inclusion of certain remedies and the exclusion of others."  Varity, 516 U.S. at 515.  Hence, where Congress has provided a remedy for a particular plaintiff's injury in some other section of ERISA, "there will likely be no need for further equitable relief, in which case such relief normally would not be 'appropriate.'"  Id. (citation omitted).  Where no other relief is provided, however, appropriate equitable relief may comprise a monetary award of some sort.  See Ream, 107 F.3d at 153 n.5.

Here, Defendants contend that because Tomlinson seeks the immediate payment of what he believes is his full pension benefit, he cannot gain the relief he seeks in Count Two.  Though Defendants are correct that Tomlinson cannot seek the outright payment of benefits with this claim, Tomlinson also requests further "equitable relief as the Court may deem just and proper."  But the imprecise nature of this request is indicative of language that is boilerplate, not directed at a specific equitable remedy.  Inasmuch as appropriate equitable relief is the only quality of relief the Court can grant for this claim, and given the limited remedies available under section 502(a)(3), Tomlinson will need to identify the precise nature of the relief he seeks in order for this

9

case to proceed in a meaningful way.²

As for the ERISA claims available to Tomlinson, it appears, at least at this stage of the case, that equitable relief under section 502(a)(3)(B) is the only method by which Tomlinson can vindicate the alleged misrepresentation regarding participation in the Plan. That is, section 502(a)(1)(B) will not provide Tomlinson a remedy because, as it stands, he has no "benefits due to him under the terms of his plan." See Varity, 516 U.S. at 515. And section 502(a)(2) does not provide a remedy for individual beneficiaries. See id. Thus, if there is to be any avenue of recovery for this alleged misrepresentation, it can be found only in section 502(a)(3)(B), if appropriate. The unavailability to Tomlinson of other ERISA sections through which he can pursue his principal claim–centered on the promise of service credit–tends to support recognition of a claim under section 502(a)(3). See id.

Moreover, Tomlinson's allegations are sufficient to state a claim for estoppel. In specific, Tomlinson alleges he relied on the promise of thirteen years of service credit in leaving his job for a position at WJHS, where there was an ongoing

---

² Count Two seeks to estop Defendants from denying Tomlinson benefits. Though cloaked in language of equity, the effect of this type of estoppel would be to order Defendants to pay Tomlinson. This reality is further highlighted by Tomlinson's *ad damnum* clause, which specifically seeks payment of benefits and some ill-defined equitable relief. Therefore, Tomlinson will need to articulate a request for an equitable remedy under his estoppel claim that is not a bare request for payment of benefits.

Medicare fraud investigation that Defendants failed to disclose.[3]  Therefore, Tomlinson has alleged reasonable and detrimental reliance on a material misrepresentation under extraordinary circumstances.  The deficiencies identified by the Court up to this point are not fatal to Tomlinson's claim under Count Two; for he has alleged facts that, if proven, entitle him to some relief, which he will need to better define.  The Statute of Limitations issue, which the Court will now turn to, does serve to bar Tomlinson's claim, for now.

### 2. *Statute of Limitations*

The Court rejects the premise of Defendants' argument because estoppel claims are not necessarily subject to the limitations period on which Defendants rely; but the Court agrees that Tomlinson's claim, as stated, is time-barred.  For purposes of determining the applicable statute of limitations, ERISA claims can be placed in two categories.

The first category includes claims for breach of fiduciary duty and is governed by the statute of limitations found in 29 U.S.C. § 1113, as follows:

> No action may be commenced under this subchapter with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or

---

[3] The Court has its doubts whether the fraud investigation has anything to do with ERISA benefits.  Plaintiff will need to tie that seemingly extraneous allegation into his claim that Defendants violated ERISA.  In any event, plying a person from an allegedly stable position with the written promise of a significant amount of service credit toward pension benefits is sufficient to satisfy the extraordinary circumstances requirement at this stage. See Burstein, 334 F.3d at 383 ("'[E]xtraordinary circumstances generally involve acts of bad faith on the part of the employer, attempts to actively conceal a significant change in the plan, or commission of fraud.'").

>with respect to a violation of this part, after the earlier of--
>
>>(1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission the latest date on which the fiduciary could have cured the breach or violation, or
>>
>>(2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation;
>
>except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.

29 U.S.C. § 1113. Four elements constitute a misrepresentation-based breach of fiduciary duty claim: (1) that defendant was acting as a fiduciary; (2) the defendant made a misrepresentation; (3) that the misrepresentation was material; and (4) that the plaintiff relied on the misrepresentation to his detriment. Horvath v. Keystone Health Plan East, 333 F.3d 450, 459 (3d Cir. 2003) (citing Daniels v. Thomas & Betts Corp., 263 F.3d 66, 73 (3d Cir. 2001)). This type of claim accrues on the date the plaintiff relied on the misrepresentation to his detriment, unless there is fraud or concealment. In re Unisys Corp. Retiree Medical Benefit "ERISA" Litigation, 242 F.3d 497, 505-06 (3d Cir. 2001). In the case of fraud or concealment, the discovery rule (discussed below) applies to toll the limitations period for plaintiffs. Id. at 502-03. To gain the benefit of this exception for fraud or concealment, the allegedly fraudulent conduct that constitutes the breach of fiduciary duty cannot also constitute the fraud or concealment that triggers the discovery rule. Id. at 503. Rather, "there must be conduct beyond the breach itself that has the effect of concealing the breach from its victim." Id.

Because Tomlinson does not allege fraud or concealment beyond the initial misrepresentation by Brown, he cannot gain the advantage of the discovery rule under section 1113. If Tomlinson's claim is for breach of fiduciary duty based on a misrepresentation, as it appears to be, then the limitations period on this claim expired about April 1993–six years after April 1987 when he accepted the position at WJHS and thus relied on the promise of service credit to his detriment.

The second category of ERISA claims consists of those that are not based on a breach of fiduciary duty. To determine the length of the limitations period for this category of claims, federal courts must look to the law of the forum state and "borrow" the limitations period from the state law claim most analogous to the plaintiff's ERISA claim. Romero v. The Allstate Corp., 404 F.3d 212, 220 (3d Cir. 2005).[4] To determine when the cause of action accrued, however, courts must look to federal common law, which has its own "discovery rule." Id. at 222. Applied to ERISA, the federal discovery rule dictates that non-fiduciary claims under ERISA accrue when a claim for benefits has been made and formally denied, unless there was a clear repudiation of benefits before that time. Id. at 222.

Under ERISA, estoppel claims of the sort Tomlinson is pursuing here are not necessarily based on a breach of fiduciary duty. This is most apparent from the elements of the claim: (1) a material misrepresentation, (2) reasonable and detrimental

---

[4] In light of the Court's ruling, it is unnecessary to decide what limitations period to borrow from New Jersey law.

13

reliance upon the representation, and (3) extraordinary circumstances.  Unlike the misrepresentation-based breach of fiduciary duty claim, estoppel does not require the existence of a fiduciary duty.  Further, though fiduciary claims can be enforced only under section 503(a)(2), section 502(a)(3) does not exist exclusively for the pursuit of fiduciary claims.  Indeed, it was not until the Supreme Court's decision in Varity that breach of fiduciary claims were clearly cognizable under section 502(a)(3).  See Varity, 516 U.S. at 516-22 (Thomas, J.) (dissent).  Thus, that an estoppel claim arises under section 502(a)(3) has no bearing on whether it is a fiduciary claim.

Further evidence of the separate existence of these two claims is that the Third Circuit has consistently discussed claims of estoppel separately from fiduciary claims under ERISA.  The Third Circuit appears to have first recognized estoppel claims under ERISA in 1981 with its opinion in Rosen v. Hotel and Restaurant Emp. & Bartenders Union of Phila., Bucks, Montgomery and Delaware Counties, Pa., 637 F.2d 592, 597 (3d Cir. 1981).  As stated, the Third Circuit recognizes estoppel claims as arising under section 502(a)(3).  See Burstein, 334 F.3d at 383.  The Third Circuit has, in dicta, suggested that fiduciary status might be a prerequisite to an estoppel claim, but has never so ruled.  See Curcio, 33 F.3d at 235 n.16 (citing Smith v. Hartford Ins. Group, 6 F.3d 131 (3d Cir. 1993) as "intimating that fiduciary status is required to be liable on an equitable estoppel claim under ERISA.").  Notwithstanding this comment on estoppel claims by the court in Curcio, the Third Circuit has always discussed fiduciary claims as

14

separate and distinct from estoppel claims.  See Burstein, 334 F.3d at 372-73 (dividing its discussion of claims into three categories: (1) claims for benefits under ERISA; (2) the equitable estoppel claim; and (3) claims for breach of fiduciary duty); Kurz v. Philadelphia Elec. Co., 96 F.3d 1544, 1553-54 (3d Cir. 1996) ("Our [dismissal] of the breach of fiduciary duty claim leaves the plaintiff class with two theories of recovery, discriminatory treatment . . . and equitable estoppel."); Fischer v. Philadelphia Elec. Co., 994 F.2d 130, 136 (3d Cir. 1993) (stating, "[i]n addition to urging breach of fiduciary duty as a basis for recovery, plaintiffs seek to recover on a theory of estoppel" and permitting plaintiffs to proceed with the estoppel theory at the district court).  And in the Smith opinion, wherein the court intimated a connection between estoppel and fiduciary claims, the Third Circuit merely acknowledged that the claim existed against one acting in a fiduciary capacity:  "In Fischer, we held an employer can be liable under ERISA in his fiduciary capacity both on breach of fiduciary duty and equitable estoppel theories for affirmative misrepresentations . . . ."  Smith, 6 F.3d at 141 n.13.  In other words, the court in Smith was not deciding whether estoppel claims were exclusively fiduciary in nature, but rather was merely affirming the availability of such a claim against a fiduciary.

   Given the Third Circuit's habitual treatment of estoppel and fiduciary claims as distinct and Defendants' failure to demonstrate otherwise, there is no apparent reason to treat estoppel claims as strictly fiduciary.  Far from availing itself of this distinction, however, Tomlinson's Complaint describes all Defendants as fiduciaries

15

acting in their fiduciary capacities. The only conclusion possible in light of Tomlinson's pleadings is that his estoppel claim is directed at fiduciaries acting in their fiduciary capacities. Therefore, 29 U.S.C. § 1113, stands as a bar to his estoppel claim inasmuch as the last act necessary to constitute a breach–Tomlinson's reliance–occurred in 1987. Tomlinson is permitted to amend his Complaint to clarify, if possible, the specific target of his estoppel claim and whether the claim is fiduciary in nature. Because Defendants have yet to file a responsive pleading in this matter, Federal Rule of Civil Procedure 15(a) permits amendment as of right, without regard to potential prejudice, delay, or futility of amendment. See Centifanti v. Nix, 865 F.2d 1422, 1431 n.9 (3d Cir. 1989) ("[N]either a motion to dismiss, nor a motion for summary judgment, constitutes a responsive pleading under Federal Rule of Civil Procedure 15(a).").

      C.  Count Three

Defendants move to dismiss Count Three of Tomlinson's Complaint on the ground that the single promise of thirteen years of service credit cannot in itself constitute an ERISA plan. Because neither party has made the actual Plan documents part of the record,[5] this argument is particularly easy to dispose of. In determining whether an

---

[5] The parties appear to have copies of the Plan and SPD; and some version of Tomlinson's Complaint appears, based on the parties' arguments, to have exhibits attached, including the Plan documents and the letter from Brown to Tomlinson regarding the thirteen years of service credit. But neither the Complaint filed at docket entry no. 1, nor the paper copy sent to the Court, has any exhibits attached. Further the parties did not include a copy of these documents with their briefs. Because the Court will not search out documents that have not been

informal ERISA plan was created in any given case, courts must always first look to the formal plan documents themselves.  Henglein v. Informal Plan for Plant Shutdown Benefits for Salaried Employees, 974 F.2d 391, 400 (3d Cir. 1992) ("[T]he sponsor's formal plans and summary plan documents should be of particular interest to the district court, and a clear delineation in a properly distributed document would be dispositive.").  But where the plan documents do not "clearly limit benefits" the court should consider all evidence tending to show the absence or existence of an informal benefit plan.  Id.

Judging from the part of the letter that was reproduced in Tomlinson's Complaint, this letter could, under certain circumstances, be viewed as creating an ERISA plan.  Defendants argue that this is impossible given that the letter does not communicate a source of funding, a procedure for making claims for benefits, or a formula for calculating benefits.  Therefore, Defendants say, this alleged informal plan–to which Defendants dismissively refer to as the "Tomlinson Pension Plan"–does not exist because the single letter provides no bases on which the plan can function.

The Court disagrees.  The letter from Brown to Tomlinson apparently promises thirteen years of service credit in the existing WJHS retirement plan.  Thus, with this letter, WJHS apparently wished to say to Tomlinson, "we have a pension plan in place, and though by its terms you are not eligible for any benefits, we will make an exception for you by granting you thirteen years of service credit."  The source of

---

made part of the record, it will proceed without them.

funding, procedures, and formulas–presumably–can all be determined by reference to the WJHS retirement plan.  The Henglein opinion itself clearly contemplates such a situation, see id. at 400-01 ("[O]ral representations by a knowledgeable and authorized management employee of the company may be evidence of a benefit plan, especially if a representation incorporates by reference the terms of a document or other plan."); as does the Seventh Circuit opinion in Miller v. Taylor Insulation Co., 39 F.3d 755, 759-60 (7th Cir. 1994) (Posner, J.).

Judge Posner, writing for the court in Miller, expressed, however, severe skepticism about the practical validity of such a claim under circumstances almost identical to this case:

> Surely what is going on here is that Miller is complaining that Taylor broke its promise to make him a participant in the plan.  To redescribe the promise as a "one man" plan is to evade the issue whether the enforcement of a promise to make a person a participant exceeds the permissible scope of the doctrine of promissory estoppel in an ERISA plan.  We think the redescription is improper, but we have already said that we think the doctrine [estoppel] does stretch as far as Miller needs to prevail, provided he can show reliance both actual and reasonable.

Miller, 39 F.3d at 761.

Although the Court may share this skepticism, the Court notes that the Seventh Circuit reversed the district court's entry of summary judgment in favor of Defendants on all ERISA claims, including the "one man" plan claim.  See Miller, 39 F.3d at 761.  Further, without seeing the WJHS retirement plan, the Court cannot decide on this motion to dismiss whether the letter to Tomlinson–another document the Court

has not seen–creates an ERISA plan or is otherwise a valid amendment of such a plan. See Henglein, 974 F.2d at 400.  The Court will, therefore, deny Defendants' motion to dismiss with respect to Count Three.

### D.  Tomlinson's State Law Claims (Counts Five, Six, and Seven)

Tomlinson's state law claims, found in Counts Five, Six, and Seven of his Complaint, are clearly preempted by ERISA inasmuch as they have as their sole purpose vindication of Tomlinson's entitlement to employee benefits based on the promise of thirteen years of service credit.  Tomlinson does not mask this fact in his brief; rather he argues that Defendants cannot at once claim that his remedy is found exclusively under ERISA yet nonetheless claim that ERISA provides him no remedy.

Each of Tomlinson's state law claims explicitly reference the same misrepresentation regarding service credit for retirement benefits.  Paragraph 68 of Count Five–containing the claim for fraudulent misrepresentation–states, "[i]n the alternative . . . the conduct of the Defendant WJHS [] amounted to intentional misrepresentation insofar as Defendant intentionally led Plaintiff to believe that he would be provided with vested benefits immediately upon commencing employment . . . ."  Counts Six and Seven simply reference Defendant's "aforesaid" conduct and state that it amounted to negligent misrepresentation and breach of contract, respectively.  The Court has ruled that Tomlinson has, at this stage of the case, a claim for violation of ERISA based on the very

conduct that forms the basis of Tomlinson's state law claims.  Therefore, and because they clearly "relate to" an ERISA plan, Tomlinson's state law claims are preempted by ERISA.  29 U.S.C. § 1144(a); see also Pane v. RCA, 868 F.2d 631, 635 (3d Cir. 1989); Bartholet v. Reishauer A.G. (Zurich), 953 F.2d 1073, 1077 (7th Cir. 1992).

**IV.  CONCLUSION**

        For the reasons expressed in this Opinion, the Court will grant in part and deny in part Defendants' motion to dismiss to the effect that (1) the motion directed at Count One is denied; (2) the motion directed at Count Two is granted; (3) the motion directed at Count Three is denied; and (4) the motion directed at Tomlinson's state law claims is granted.  Under Federal Rule of Civil Procedure 15(a), Tomlinson is free to amend his Complaint.  An appropriate Order will be entered.

                              s/Robert B. Kugler_____
Dated: 6-28-05                ROBERT B. KUGLER
                              United States District Judge